**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CORLIVEETHO MCMILLIAN,** | : | **Civil No. 1:12-CV-1707** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **( Judge Conner)** |
| | : | |
| **JEROME WALSH, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

I.      **Statement of Facts and of The Case**

    A.      **Procedural History**

This is a *pro se* civil rights case that was brought by a state prisoner, Corliveetho McMillian, through the filing of a civil rights complaint on August 27, 2012. (Doc. 1.) McMillian's complaint is an 80 page document which contains more than 195 separately numbered paragraphs averring factual matters and legal claims. (Id.)  The complaint names some 51 Defendants. Fourteen of these Defendants are anonymous and are only identified as "John Doe. " (Id.)  Five of these Defendants are employed at, located at, and alleged to have taken actions at  SCI Graterford, a facility which is located within the venue of the United States District Court for the Eastern District of Pennsylvania.   (Id., ¶¶33-37.)   Another fourteen of these Defendants are then named in this complaint simply on what McMillian describes as

supervisory liability, or because McMillian alleges that they failed to adequately investigate his various formal and informal complaints.[1]

With respect to the remaining Defendants named in this lawsuit, McMillian's complaint provides a detailed description of his life in prison between May 2010 and May, 2012. (Id., ¶¶111-195.)  As described by McMillian, this experience has been marked by taunts and gossip by correctional staff concerning McMillian, conduct that is unpleasant and unprofessional but does not rise to the level of constitutional infractions.  (Id., ¶¶111-120.)  McMillian then describes a series of events at SCI Dallas that allegedly when beyond mere taunts and involved acts by several staff members to defile the Plaintiff's cell with human feces. (Id., ¶¶120-142.) According to McMillian this conduct escalated until March 14, 2011,[2] when he began writing a complaint to prison officials concerning the actions of one correctional officer.  As he wrote, McMillian observed Officer Naybill, "comming [sic] toward me sounding out with his threats intimdat[ing] me which brought out all the types of

---

[1]These Defendants include Defendants Walsh, Brittin, Moiser, Demming, Tera, Keller, Buck, Detrett, Josewicz, Dingler, Judge, Wenerowicz, Hoover, and Papalinous.

[2]McMillian has alleged that he periodically complained about his housing placement at SCI Dallas during this time, but his complaint also alleges that prison officials affirmatively responded to his concerns by transferring him several times within the prison.

stressful/fearful emotions and just to hear Naybill telling/demanding me to take lock-up caused a natural fearful reaction when he pushed me pen in hand I raised may arms and swinging aimlessly in self defense and fear but sticking Naybill." (Id., ¶142.)

After McMillian apparently, but aimlessly, stabbed Officer Naybill with a pen, an affray ensued.  McMillian was subdued, and event when he contends involved excessive force, and placed in a cell, where he alleges he was denied medical treatment and was subjected to deliberate indifference of his medical conditions. (Id., ¶¶ 150-158.) The balance of McMillian's complaint then describes his hegira through the state prison system during the past year, travels which he alleges have been marked by staff taunts, and threats, as well as episodes where staff have tainted his food, defiled his cell, and instigated inmates to spray him with fecal matter. (Id., ¶¶ 158-195.)  Thus, liberally construed, in his complaint McMillian levels a number of Eighth Amendment claims relating to excessive force, deliberate indifference to his medical needs, and the conditions of his confinement.  He then couples these claims with allegations that he has been retaliated against due to his lodging of grievances, in violation of the First Amendment.  On the basis of these far-reaching allegations, Mr. McMillian seeks injunctive and declaratory relief, along with compensatory damages of $400,000 from each Defendant, and punitive damages of $500,000 from each Defendant.

Along with this complaint, the Plaintiff filed a motion for leave to proceed *in forma pauperis.* (Doc. 11.) For the reasons set forth below, we will GRANT this motion for leave to proceed *in forma pauperis* (Doc. 11.), but recommend that the Court dismiss a number of the claims and Defendants set forth in the complaint, for failure to presently state a claim upon which relief can be granted, without prejudice to allowing the Plaintiff to attempt to correct the deficiencies noted in this report and recommendation by filing an amended complaint.

## II.   <u>Discussion</u>

### A.   <u>Screening of *Pro Se In forma Pauperis* Complaints–Standard of Review</u>

This Court has a statutory obligation to conduct a preliminary review of prisoner *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to  show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's

entitlement to relief.  A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'  Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations

which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B.   In Their Present Form, McMillian's Supervisory Liability and Failure to Investigate Claims Fail as a Matter of Law

Judged against these legal benchmarks, we find that McMillian's claims of supervisory liability, and claims premised upon an alleged failure to more adequately address his various complaints fail as a matter of law.  In considering claims brought against supervisory officials arising out of alleged Eighth Amendment violations, the courts  recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

For example, supervisory liability will rest on the basis that supervisors maintained deficient policies that resulted in the plaintiff sustaining an Eighth Amendment injury.  In these kinds of cases based upon allegations of deficient policies, the Third Circuit has fashioned a four-part test based upon the reasoning of City of Canton v. Harris, 489 U.S. 378 (1989), for supervisory liability on an Eighth Amendment claim for failure to supervise.  Under this test, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the

supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." Beers-Capitol, 256 F.3d at 134 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).  At present, McMillian's pleadings do not meet this stringent standard of proof, since they do not allege well-pleaded facts which identify a constitutionally deficient policy or practice at the prison, but rather merely rely upon the incantation of a formulaic recital of the elements of a cause of action, a form of pleading that will not do.

Furthermore, it is equally clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred.  Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa.

-11-

Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006).

Here, McMillian does not allege that these fourteen Supervisory Defendants directed the conduct complained of by the Plaintiff, or had knowledge of that conduct and acquiesced in it. Rather, in the first instance, McMillian simply alleges a bare assertion of supervisory liability, coupled with claims that these Defendants failed to act favorably upon McMillian's grievances. To the extent that McMillian premises liability of any particular Defendant upon the Defendant's supervisory status without setting forth any further factual basis for a claim against him in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of this Defendant. Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)

Nor can an inmate, like McMillian, sustain claims against prison officials based solely upon assertions that the officials failed to adequately respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system.

See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan,

81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures
do not give rise to a liberty interest protected by the Due Process Clause)

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third
Circuit has recently held that summary dismissal is appropriate "because there is no
apparent obligation for prison officials to investigate prison grievances. See Inmates
of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v.
Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011).

In this case, fairly construed, McMillian's claims against these fourteen
Defendants presently consist of little more than assertions of *respondeat superior*
liability, coupled with dissatisfaction with their processing of this inmate's past
grievances, assertions which as a matter of law do not suffice to state a constitutional
tort claim.  Therefore, these Defendants are entitled to be dismissed from this case.

### C.   McMillian May Not Sustain an Eighth Amendment Claim Based Solely Upon Verbal Harassment

In addition, McMillian has lodged a series of claims based upon alleged taunts
and gossiping by prison staff, asserting that staff verbally harassed the Plaintiff,
thereby exposing him to cruel and unusual punishment in violation of the Eighth
Amendment to the United States Constitution. This claim also warrants only brief
consideration since: "It is well settled that verbal harassment of a prisoner, although

deplorable, does not violate the Eighth Amendment.  See McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' ")." Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006). See, e.g., Rister v. Lamas, 4:CV-10-1574, 2011 WL 2471486 (M.D. Pa. June 21, 2011); Patterson v. Bradford, CIV. 10-5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011);  Williams v. Bradford, CIV. 10-5120 JBS, 2011 WL 1871437 (D.N.J. May 13, 2011);  Ringgold v. Lamby, 565 F. Supp. 2d 549, 553 (D. Del. 2008); Sharpe v. Costello, 1:06 CV 1493, 2007 WL 1098964 (M.D. Pa. Apr. 11, 2007).  Because McMillian simply alleges in some instances that he was verbally harassed by staff, and given that it is "well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment," Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006), these verbal harassment allegations also fail to state a constitutional claim.

### D.    A Number of Claims Are Barred By the Statute of Limitations

Entirely aside from these substantive constitutional considerations, a number of McMillian's claims are barred by the statute of limitations.  It is well-settled that

claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. <u>Wilson v. Garcia</u>, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. <u>Sameric Corp. of Delaware, Inc. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998); <u>see also</u>, <u>Nelson v. County of Allegheny</u>, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." <u>Barnes v. American Tobacco Co.</u>, 161 F.3d 127, 154 (3d Cir. 1998) (quoting <u>Kichline v. Consolidated Rail Corp.</u>, 800 F. 2d 356, 360 (3d Cir. 1986)). <u>See also</u> <u>Lake v. Arnold</u>, 232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." <u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a

continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." <u>Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.</u>, 927 F.2d 1283, 1295 (3d Cir.1991). In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." <u>West</u>, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. <u>See id.</u> at 755 n. 9 (citing <u>Berry v. Board of Supervisors of Louisiana State Univ.</u>, 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. <u>See Berry</u>, 715 F.2d at 981.

<u>Cowell v. Palmer Township</u>. 263 F.3d 286, 292 (3d Cir. 2001)

Here, the factual narrative in McMillian's complaint begins in May of 2010, yet his complaint was filed on August 27, 2012, than two years after the first events recited by McMillian. Thus, on the face of the complaint, McMillian's allegations pertaining to events which occurred between May and August, 2010, fall outside the statute of limitations. Furthermore, McMillian cannot toll this period of time since it is evident from his complaint that these events which are alleged to have occurred between May and August 2010 had the degree of permanence and immediacy that

would have triggered McMillian's awareness of his duty to assert a timely claim.

Therefore, these claims are time-barred and should be dismissed.

**E.    Venue Does Not Lie in this District Over a Number of the Acts and Defendants Named in the Complaint and These Defendants Are Not Properly Joined in a Single Lawsuit**

There are two other, related flaws with this pleading as it relates to events at

SCI Graterford, where McMillian states he was housed between June and August of

2011, and where he alleges he was subjected to abuse by staff.  ( Doc. 1, ¶¶170-184.)

These acts are disparate in time and place from the prior events alleged to have taken

place in this district, and occur in another judicial district.  In such cases, where

alleged violations of the United States Constitution at SCI Graterford form the basis

for these claims, 28 U.S.C. § 1391(b) defines the proper venue as to these specific

allegations and provides that any action challenging actions at these two prisons

should:

> be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

In this case, "a substantial part of the events or omissions giving rise to the claim occurred" at SCI Graterford, in the Eastern District of Pennsylvania.  Moreover, with respect to these claims it appears that the five Defendants named in these allegations either reside in, or may be found in the venue of the United States District Court for the Eastern District of Pennsylvania.  See 28 U.S.C. § 118(a).  When it appears that claims have been brought in the wrong venue, there are two potential remedies available to the Court.  Under 28 U.S.C. § 1406:

> The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought.

28 U.S.C.A. § 1406(a).

This Court is permitted *sua sponte* to raise the issue of an apparent lack of venue, provided the Court gives the Plaintiff notice of its concerns and an opportunity to be heard on the issue.  See e.g., Stjernholm v. Peterson, 83 F.3d 347, 349 (10th Cir. 1996)(" [A] district court may raise on its own motion an issue of defective venue or lack of personal jurisdiction; but the court may not dismiss without first giving the parties an opportunity to present their views on the issue.")  In this case other considerations compel the dismissal of some of these claims, but without prejudice.  However, given fact that this Court lacks venue over these Defendants, and

allegations arising at SCI Graterford, it is recommended that McMillian also be advised that these claims are not properly joined in this lawsuit.

With respect to these particular matters, this complaint is further flawed in another respect. In his complaint, McMillian collects a series of distinct claims, involving diverse parties, and disparate acts which are alleged to have occurred at different times. The joinder of these divergent claims in a single lawsuit is inappropriate under the rules governing joinder of defendants in federal litigation. Those rules provide, in part, that:

> Person[s] . . . may be joined in one action as defendants if:
>
> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of *the same transaction, occurrence, or series of transactions or occurrences*; *and*
>
> **(B)** *any question of law or fact common to all defendants will arise in the action.*

F. R.Civ. Pro., Rule 20(a)(2)(emphasis added).

In this case, it cannot be said from that all of these allegations spanning more than two years arise out of the same transaction, occurrence or series of transactions or occurrences. More fundamentally, these acts, many of which allegedly occurred outside this Court's venue, simply do not involve common questions of fact, as required by Rule 20. Quite the contrary, the factual issues of liability relating to these many individual Defendants will entail an individualized assessment of the

circumstances surrounding each of these diverse and disparate allegations.  "[G]iven the hodgepodge of claims raised in the original complaint," <u>Boretsky v. Governor of New Jersey</u>, No.08-3313,  2011 WL 2036440, *3 (3d Cir. May 25, 2011), this Court may properly, in the exercise of its discretion, dismiss this complaint, and require McMillian to file separate complaints relating to these factually distinct claims. Furthermore, where parties are improperly joined under Rule 20, the court may direct that those parties be dropped from an action.  As the United States Court of Appeals for the Third Circuit has observed:  "Rule 21 instructs that the misjoinder of parties provides no grounds for dismissing an action.  <u>See</u> Rule 21; <u>Sabolsky v. Budzanoski</u>, 457 F.2d 1245, 1249 (3d Cir.1972).  Courts may add or drop parties under Rule 21, but they may not dismiss actions where there has been a misjoinder of parties. <u>Letherer v. Alger Group, LLC.</u>, 328 F.3d 262 267 (6th Cir.2003)." <u>Mincy v. Klem</u>, 303 F. App'x 106, 108 (3d Cir. 2008).   Therefore, these joinder and venue considerations may call dismissal, dropping or transferring the Graterford prison for the claims and parties.

### F.   **McMillian's Claim for a Specified Sum of Unliquidated Damages Should be Stricken**

Finally, we note that the Court should also strike the various claims for specific sums of unliquidated damages from this *pro se* complaint.  In this regard, Rule 12 (f)

of the Federal Rules of Civil Procedure imposes a duty on the Court to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter.  Fed. R. Civ. P. 12(f).  Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance.  <u>Singh v. Superintending School Committee of the City of Portland</u>, 593 F. Supp. 1315 (D. Me. 1984).   In this case, the Plaintiff's various claims for specified amounts of unliquidated damages violate Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.*  The short plain statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying particular amounts of unliquidated damages, these specific dollar claims should be stricken from the complaint without prejudice to the Plaintiff arguing in any subsequent trial or hearing on the merits for any appropriate amount of damages supported by the evidence.

### G.    This Complaint Should be Dismissed Without Prejudice

In sum, in its current form this complaint fails to state a claim against a number of Defendants upon which relief may be granted.  While this screening merits analysis calls for dismissal of this some claims and parties in this action, we recommend that the Plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint.  We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Accordingly, it is recommended that the Court provide the Plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the Plaintiff to comply with the rules governing civil actions in federal court.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's motion for leave to proceed *in forma pauperis* be GRANTED (Doc. 11.), but that the following claims and parties be dismissed or dropped from this action:

1.      McMillian's supervisory liability and failure to investigate claims against Defendants Walsh, Brittin, Moiser, Demming, Tera, Keller, Buck, Detrett, Josewicz, Dingler, Judge, Wenerowicz, Hoover, and Papalinous.

2.      All claims based solely upon allegations of verbal abuse.

3.      All claims arising out of events which are alleged to have occurred prior to August 27, 2010.

4.      All claims and parties involving conduct at SCI Graterford, which is located within the venue of the United States District Court for the Eastern District of Pennsylvania, including all claims against Defendants Wenerowicz, Drissel, and Van Cliff.

Without prejudice to the Plaintiff endeavoring to correct the defects cited in this report by filing an amended complaint, provided that the Plaintiff acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the

basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of September 2012.

_**S/Martin C.  Carlson**_
Martin C. Carlson
United States Magistrate Judge